# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0628-MR

JAMES GARTIN                                                APPELLANT

|  |  |  |
|---|---|---|
| V. | ON APPEAL FROM LAWRENCE CIRCUIT COURT<br>HONORABLE JOHN DAVID PRESTON, JUDGE<br>NO. 17-CR-00025 |  |

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**REVERSING AND REMANDING**

James Gartin appeals as a matter of right from the judgment of the Lawrence Circuit Court sentencing him to a term of seventy years' imprisonment following his conviction at a jury trial of rape, sodomy, and sexual abuse, all in the first degree. After a careful review, we reverse and remand.

A detailed recitation of the historical facts is unnecessary for resolution of the issues presented. Thus, we include only a truncated version of the facts needed for our analysis. Gartin resided in Louisa, Kentucky, with his girlfriend and her minor daughter, Linda.[1] On January 13, 2017, Linda reported Gartin had raped her earlier that morning. She reported this was not the first time

---

[1] To protect the child's privacy, she will be referred to using a pseudonym.

she had been assaulted, revealing Gartin had previously raped her, forced her to perform oral sex on him as the "cost" of using the computer, shaved her pubic hair, and had placed his mouth on her private parts. Subsequent DNA testing indicated semen found inside Linda's vagina matched Gartin.

Gartin was indicted on one count of rape in the first degree and two counts of sodomy in the first degree. All three counts were charged as a continuing course of conduct against a vulnerable victim pursuant to KRS[2] 501.100.[3] At trial, then thirteen-year-old Linda told the jury about the rape which occurred on January 13, 2017. She also testified about numerous instances of oral sodomy and at least one other rape. Near the end of her testimony, Linda indicated sexual intercourse occurred "every day" for approximately two months prior to January 13, 2017.

The jury was instructed on one count of rape in the first degree, two counts of sodomy in the first degree, and the lesser-included offense of sexual abuse in the first degree for each of those three counts. During deliberations, the jury asked the trial court to explain the difference between the two identically-worded sodomy instructions. The court indicated it could not do so after conferring with Gartin and the Commonwealth and instructed the jury to make its determination based on their memory of the evidence as a whole.

---

[2] Kentucky Revised Statutes.

[3] In accordance with the statute, the indictment averred on the rape charge Gartin had engaged in sexual intercourse two or more times with the victim between January 13, 2016, and January 13, 2017, and on each of the two sodomy counts alleged Gartin had engaged in deviate sexual intercourse with the victim on two or more occasions in the same time period. The sodomy counts were identically worded.

Shortly thereafter, the jury returned its verdict finding Gartin guilty of rape in the first degree, sodomy in the first degree, and sexual abuse in the first degree as a lesser-included charge of the second sodomy count. The jury recommended a sentence of fifty years for the rape, fifty years for the sodomy, and twenty years for the sexual abuse to be served consecutively. The trial court appropriately reduced the sentence to seventy years' imprisonment to comply with statutory maximums. Gartin now appeals as a matter of right.

Gartin's first two arguments are intertwined and will be discussed concurrently. He contends the jury instructions on the rape, sodomy, and sexual abuse charges were duplicative and resulted in non-unanimous verdicts. We agree. Jury Instruction No. 5 reads:

> You will find the defendant, James Gartin, guilty of **First Degree Rape**, under this Instruction if and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
> A. That in Lawrence County between the dates of January 13, 2016 and January 13, 2017 and before the finding of the Indictment herein, the defendant engaged in sexual intercourse with [Linda];
>
> AND
>
> B. That at the time of such intercourse, [Linda], was less than 12 years of age.

The jury instructions on sodomy in the first degree, Jury Instruction Nos. 7 and 9, were identical and similarly read:

> You will find the defendant, James Gartin, guilty of **First Degree Sodomy**, under this Instruction if and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

3

A. That in Lawrence County for a period of time between January 13, 2016 and January 13, 2017, the defendant engaged in deviate sexual intercourse with [Linda];

AND

B. That at the time of such intercourse, [Linda], was less than 12 years of age.

Jury Instruction Nos. 6, 8, and 10 on the lesser-included offense of sexual abuse in the first degree read:

You will find the defendant, James Gartin, guilty of **First Degree Sexual Abuse**, under this Instruction if and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

A. That in Lawrence County between the dates of January 13, 2016 and January 13, 2017 and before the finding of the Indictment herein, he subjected [Linda] to sexual contact;

AND

B. That at the time of such contact, [Linda], was less than 12 years of age.

Inexplicably, and as conceded by the Commonwealth, the instructions did not include a necessary element of the crimes for which Gartin stood charged. As given, the instructions do not comport with the indictment or statutory requirements as they omit the "continuing course of conduct" element of KRS 501.100.

In response to this Court's suggestions on several occasions, *see e.g. Ruiz v. Commonwealth*, 471 S.W.3d 675 (Ky. 2015), *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013), the Legislature enacted KRS 501.100 to

address[] a persistent problem in prosecuting multiple sexual offenses committed against a young child victim . . . when evidence differentiating one illegal act from another is difficult to obtain, by

4

permitting the multiple crimes to be charged as a single 'continuing course of conduct' crime."

*Elam v. Commonwealth*, 500 S.W.3d 818, 826 n.8 (Ky. 2016). Although the Commonwealth properly indicted Gartin under KRS 501.100, for reasons unclear from the record, neither the Commonwealth nor the trial judge ensured the jury was correctly instructed. Had either referenced the indictment or looked to Cetrulo and Cooper's *Kentucky Instructions to Juries* (Criminal) Sections 4.24.1, 4.36.1, and 4.48.1, the instructional error could quite easily have been remedied. However, their failure to do so resulted in instructions which plainly violated our unanimous verdict jurisprudence.

The jury was presented with testimony regarding one specific date and specific act of rape, but also vague testimony regarding allegations of numerous other instances of rape which Linda described only as happening "every day" for two months without further elaboration or distinction. Similarly, the jury was not presented testimony of any specific date or specific act of sodomy upon which to base a conviction. Linda's testimony as to a two-month time frame in which potentially dozens of instances of inappropriate sexual behavior are alleged to have occurred was insufficient to support Gartin's convictions on one count of each crime under the instructions as given. This Court has clarified "such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—violates the requirement of a unanimous verdict." *Johnson*, 405 S.W.3d at 449.

5

Accordingly, although the proof of his guilt was strong, we are constrained to reverse Gartin's convictions and sentence.

Prosecuting child sexual abuse cases can be extremely difficult, especially where, as here, the child cannot separate with specificity the numerous instances of abuse occurring over an extended period of time but instead describes patterns of illicit conduct. By enacting KRS 501.100, at this Court's suggestion, the Legislature heeded the call to address this problem and thereby gave prosecutors an important option when presented with the difficulty of charging—and convicting—a person accused of multiple sexual offenses against a child or other vulnerable victim. This statutory tool was designed to avoid the very scenario presented today.

Clearly, the Commonwealth was aware of the statute's existence as the indictment precisely parroted the "continuing course of conduct" language of KRS 501.100. At trial, the Commonwealth elicited testimony supporting conviction for the crimes as charged. However, rather than utilizing the appropriate template to properly instruct the jury under KRS 501.100 and its "continuing course of conduct" requirements, the jury was instructed on standard rape and sodomy counts.[4]

---

[4] We note the Commonwealth did not seek to amend the indictment under Kentucky Rules of Criminal Procedure 6.16 and, contrary to the argument advanced on appeal, there was no "constructive" amendment of the indictment. Further, even had the Commonwealth taken this step, the result would be the same because the testimony elicited at trial and the instructions as given clearly resulted in a jury unanimity error requiring reversal. *Johnson,* 405 S.W.3d at 449.

6

It is axiomatic that the trial court has a duty to prepare and give instructions to the jury on the offenses supported by the evidence introduced at trial and reject any proposed jury instructions that do not accurately reflect the law.[5] *See Holland v. Commonwealth,* 466 S.W.3d 493, 498 (Ky. 2015); *Sanders v. Commonwealth,* 301 S.W.3d 497, 500 (Ky. 2010). Had the trial court but taken greater care to fulfill this duty, it is unlikely we would now be constrained to reverse Gartin's convictions. We pause to note that although it had no absolute duty to do so, the Commonwealth could have objected to the instructions or otherwise apprised the trial court of its misstep rather than allowing it to proceed headlong into committing reversible error. Whether by design, inattention, or otherwise, it did not do so. Nevertheless, because the trial court ultimately bears the obligation to properly instruct the jury, its failure to do so has led to this unfortunate result which will undoubtedly cause the young victim to return to court to testify about and relive once again the horrible abuses she endured. This simply should not have happened.

On retrial, we direct the trial court to instruct the jury with specificity as to each act being charged for each count of the indictment to avoid a unanimity problem. The grand jury having indicted under KRS 501.100, should the Commonwealth elect to retry Gartin, the jury should be instructed in accordance with KRS 501.100, mirror its language, and specifically include the

---

[5] Our review of the record reveals neither Gartin nor the Commonwealth tendered proposed instructions for the trial court's consideration.

7

phrase, "continuous course of conduct." In any event, reference to the pattern jury instructions is strongly encouraged to prevent future errors.

Gartin raises two other allegations of error which we shall address only briefly as we are already reversing his convictions. First, Gartin asserts he was denied a speedy trial. We disagree. Although Gartin initially invoked his constitutional right and requested he receive a speedy trial, he subsequently waived that right on several occasions both orally and in written motions. He cannot now be heard to complain. *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988). Further, having reviewed the record, we are unable to discern any prejudice to Gartin from the delays in trial, several of which occurred on his own request. There was no error.

Finally, Gartin argues the Commonwealth misled the jury by its presentation during the sentencing phase of a previous order granting a pretrial diversion in an unrelated criminal case. He asserts the Commonwealth erroneously referred to the order as a "judgment" and thereby implied to the jury he had a prior criminal conviction when, in fact, he did not. We need not determine whether the Commonwealth's comment rose to the level of reversible error as we are already reversing Gartin's convictions. Further, we trust the Commonwealth will more accurately describe any documents presented regarding Gartin's criminal history should he be found guilty on retrial and subjected to a new sentencing phase.

For the foregoing reasons, we reverse Gartin's convictions and remand for further proceedings consistent with this Opinion.

All sitting. Minton, C.J.; Hughes, Nickell, and VanMeter, JJ., concur. Lambert, J., dissents. Keller, J., dissents in part and concurs in result only in part by separate opinion in which Conley, J., joins.

KELLER, J., DISSENTING IN PART AND CONCURRING IN RESULT ONLY IN PART: Respectfully, I dissent from the majority's holding that the jury instructions denied Gartin his right to a unanimous verdict. However, because the sodomy instructions created a reviewability issue that violated Gartin's due process right, I concur in result only with the majority's reversal of the sodomy and sexual abuse convictions.

The majority correctly cites to this Court's precedent which requires reversal when there is a general jury verdict based on evidence of multiple separate instances of criminal conduct. However, I continue to believe this is an inaccurate reading of our constitutional and statutory requirement for unanimity in jury verdicts.[6]

For decades, the Court held steadfast to a constant principle: when multiple theories of a crime are supported by the evidence, multiple-theory instructions are sufficiently protective of the right to a unanimous verdict. *See Wells v. Commonwealth,* 561 S.W.2d 85, 88 (Ky. 1978) ("It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had

---

[6] I will refrain from continuing to provide an in-depth explanation of the evolution of the so-called unanimity problem. However, a minority of this Court has repeatedly referenced the history of these cases in several separate opinions. *See King v. Commonwealth,* 554 S.W.3d 343, 365-77 (Ky. 2018) (Keller, J., concurring in part and dissenting in part).

committed the crime … as … defined by statute."); *Harris v. Commonwealth,* 793 S.W.2d 802 (Ky. 1990) (overruled on other grounds by *St. Clair v. Commonwealth,* 451 S.W.3d 597 (Ky. 2014)); *Davis v. Commonwealth,* 967 S.W.2d 574 (Ky. 1998). In contrast, when one of the alternative theories is unsupported by the evidence, then these multiple-theory instructions become a unanimity error. *See Boulder v. Commonwealth,* 610 S.W.2d 615 (Ky. 1980) (overruled on other grounds by *Dale v. Commonwealth,* 715 S.W.2d 227 (Ky. 1986)); *Hayes v. Commonwealth,* 625 S.W.2d 583 (Ky. 1981); *Burnett v. Commonwealth,* 31 S.W.3d 878 (Ky. 2000) (overruled on other grounds by *Travis v. Commonwealth,* 327 S.W.3d 456 (Ky. 2010)); *Commonwealth v. Whitmore,* 92 S.W.3d 76 (Ky. 2002).

In *Bell v. Commonwealth,* however, the Court began using language that signaled a shift in our unanimity holdings: that the jury must all believe exactly the same set of facts leading to its conviction. 245 S.W.3d 738, 744 (Ky. 2008) (overruled on issue of the curative power of closing argument as to erroneous instructions by *Harp v. Commonwealth,* 266 S.W.3d 813 (Ky. 2008)). This new line of thinking was further refined in *Harp v. Commonwealth* later that year. 266 S.W.3d 813. In that case, the defendant sexually abused his girlfriend's four-year-old daughter, B.B., from December 2003 to February 2006. *Id.* at 816-17. The jury was instructed on seven counts of sexual abuse in the first degree, one count of sodomy in the first degree, and one count of indecent exposure. *Id.* at 817. The sexual abuse instructions were identical and factually undistinguished, all giving the same time period as described above.

10

*Id.* The Court held that "in a case involving multiple counts of the same offense, a trial court is obliged to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred." *Id.* at 818. The Court also held that such error, if preserved, is reversible. *Id.*

As I have noted before, other jurisdictions permit a distinction between multiple *crimes* evidence and alternative *means* evidence within the realm of sexual abuse cases.[7] Under these cases, the jury may disagree on the *mode* of how a crime was committed but all must agree the defendant committed the crime in question. All the jurors must agree that each *element* of the crime was satisfactorily proven. The jury members must agree that the prosecution proved each element beyond a reasonable doubt. So long as these fundamental elements are met, unanimity is satisfied.

Under this reasoning, Gartin's convictions would not be reversed based on the unanimity issue. All twelve jurors agreed that the Commonwealth proved each element beyond a reasonable doubt, and this is all that is

---

[7] *See State v. Gustafson*, 350 N.W.2d 653, 663 (Wis. 1984) (The majority of the court "conclude[d] that these acts of sexual contact were simply alternative means of committing the *actus reus* element, i.e. the wrongful act of sexual contact, involved in the crime of second-degree sexual assault."); *State v. Godoy*, 284 P.3d 410, 413 (N.M. Ct. App. 2012) ("[J]ury unanimity is required only as to the verdict, not to any particular theory of guilt."); *State v. Ayala-Leyva*, 848 N.W.2d 546, 553-54 (Minn. Ct. App. 2014) ("A jury must unanimously agree that the state has proved each element of an offense. But the jury is not 'always required to agree on alternative ways in which a crime can be committed.'"); and *State v. Gardner*, 889 N.E.2d 995, 1005 (Ohio 2008) ("Unanimity is not required … as to the means by which the crime was committed so long as substantial evidence supports each alternative means.").

required. Our constitution and our prior case law have never required that juries unanimously agree on a particular set of facts to support a conviction. In fact, our case law has held just the opposite. *See Wells*, 561 S.W.2d at 88. Rather, it is the unanimity of the *verdict* that is integral to our constitutional analysis, and it is the unanimity of the *verdict* that is a matter of due process. As Justice Cunningham stated in his dissent in *Johnson v. Commonwealth*, "[w]e are requiring juries to be unanimous on matters that the unanimous verdict requirement never anticipated." 405 S.W.3d 439, 461 (Ky. 2013) (Cunningham, J., dissenting). The constitution only requires a unanimous jury find that the prosecution has proven each element of the offense. Such was done in this case.

Despite my position on this issue, the majority of the Court has created precedent holding that instructions like the ones given in this case violate a defendant's right to a unanimous verdict. Because of that precedent, and in an attempt to alleviate the unanimous verdict problems that permeate child sexual abuse cases, the legislature enacted Kentucky Revised Statute (KRS) 501.100, which allows the Commonwealth to charge a person with "committing an offense against a vulnerable victim in a continuing course of conduct." According to the statute,

> [t]o convict a person of an offense against a vulnerable victim in a continuing course of conduct, the jury shall unanimously agree that two (2) or more acts in violation of the same statute occurred during the specified period of time. The jury need not agree on which specific acts occurred.

KRS 501.100(4).

In this case, Gartin was indicted for the rape and sodomy of Linda in a continuing course of conduct under KRS 501.100. However, the jury was not instructed that it was required to believe beyond a reasonable doubt that Gartin committed each of the sexual offenses two or more times in order to find him guilty of the charged crimes. Instead, the jury was instructed on single acts of rape and sodomy, each with a lesser-included offense of sexual abuse. As such, the instructions as given to the jury did not comport with the indictment; however, neither the parties nor the trial judge sought to correct the instructions.

The Commonwealth did not move to amend the indictment under Kentucky Rule of Criminal Procedure 6.16 and argues to this Court that the instructions as given resulted in a "constructive" amendment of the indictment. I have found very little precedent that allows a constructive amendment to an indictment and do not believe it was appropriate here. However, I also see no prejudice to Gartin, as his defense put forth at trial was that he was guilty of sexual abuse but not rape or sodomy. This defense was not affected by the differences in the indictment and jury instructions as given.

Finally, although the identical instructions given to the jury on the two counts of sodomy did not create a unanimity problem, they did create a *reviewability* problem. As I explained in my dissent in part in *King*, "when there are multiple counts [of the same offense] and only some return guilty verdicts … then reviewability becomes an integral issue. If the Court cannot determine what the defendant was convicted of, then that defendant has lost all means to

13

any effective appeal." 554 S.W.3d at 372 (Keller, J., concurring in part and dissenting in part). This "goes to the heart of the issue and determines whether the error is reversible or not. If a defendant loses the effective means of appeal, his due process rights have been violated and there is an error of constitutional magnitude that must be corrected." *Id.*

Such is the case with Gartin's convictions for sodomy and sexual abuse. Linda testified to multiple acts of sodomy, and the jury was provided with two identical instructions for sodomy, each with an identical instruction for the lesser-included offense of sexual abuse. The jury found Gartin guilty of one count of sodomy but not guilty of the other, finding him only guilty of the lesser-included offense of sexual abuse on that count. Because the jury instructions did not contain any distinguishing characteristics, it is impossible for this Court to "determine what the defendant was convicted of" and, therefore, to effectively review his convictions. *See id.* Because of this, Gartin "lost all means to an effective appeal," and his due process rights have been violated. *See id.* Accordingly, his convictions on those two counts cannot stand.

As the Commonwealth concedes in its brief, because this Court is reversing Gartin's convictions for sodomy and sexual abuse due to the inadequate jury instructions, the Commonwealth will be unable to retry Gartin on the sodomy charge on remand. Although that issue is not yet ripe for this Court's review, it is worth noting. *See Dunn v. Maze*, 485 S.W.3d 735, 744 (Ky. 2016). Gartin was only convicted of one count of sodomy and was acquitted of the other. Because the jury instructions were identical, we do not know exactly

14

which criminal act the jury found Gartin guilty of, and we do not know exactly which criminal act the jury acquitted Gartin of. *Id.* at 748. A new trial on the vacated sodomy count will raise a substantial risk that Gartin will be tried for a crime for which he has already been acquitted, thereby violating his double jeopardy rights. *See id.* at 738.

In summary, I disagree with the majority's reversal of Gartin's rape conviction. However, I agree that Gartin's sodomy and sexual abuse convictions must be reversed but would do so for a different reason.

Conley, J., joins.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Emily Bedelle Lucas
Assistant Attorney General